IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TERESA ALBIZU-RODRIGUEZ,

Plaintiff,

v.

CARLOS ALBIZU UNIVERSITY,

Defendant.

CIVIL NO. 08-1421 (CVR)

## OPINION AND ORDER

### INTRODUCTION

Plaintiff Teresa Albizu-Rodríguez ("plaintiff Albizu-Rodríguez") filed an action against defendant claiming she was discriminated on the basis of sex and age, violations to the Equal Pay Act on the basis of sex, and for retaliation for having filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC"). *Amended Complaint, Docket No. 4.*

Defendant Universidad Carlos Albizu ("UCA") filed a Motion for Summary Judgment submitting plaintiff Albizu-Rodríguez did not exhaust administrative remedies as to her age discrimination claim and that her sex and retaliation claims are time-barred. (Docket No. 59). Defendant UCA also avers that, if the claims are considered, plaintiff Albizu-Rodríguez would still have no cause of action for discrimination as to pay on the basis of sex for she was paid the same salary as her male counterpart as to which she had full knowledge since the onset. In regards to age, plaintiff was not substituted by a younger employee as alleged since the position she held as Vice President of UCA was eliminated under a reorganization

Teresa Albizu-Rodríguez et. al v. Carlos Albizu University,
Civil No. 08-1421 (CVR)
Opinion & Order
Page No. 2

and no one substituted plaintiff.  As to retaliation, defendant UCA submits termination from employment was on account of a legitimate reorganization with just cause for the termination and not as a result of retaliation and plaintiff Albizu-Rodríguez refused to accept the new position which was offered to her.  Defendant UCA further avers that having plaintiff Albizu-Rodríguez failed to present a cause of action as to her federal claims, the state pendent claims should be dismissed, more so since plaintiff's position was at the State of Florida at the Miami campus of the UCA and is not covered by any state laws in the Commonwealth of Puerto Rico where the complaint was filed by plaintiff Albizu-Rodríguez.[1]

Plaintiff Albizu-Rodríguez filed her opposition to defendant's summary judgment request with a statement of uncontested facts and additional relevant facts.  (Docket No. 77).   In plaintiff's opposition, she submits her EEOC for employment sex/gender discrimination under Title VII was timely.  She also claims her claims for age and marriage discrimination causes of action were filed under Law No. 100, for which she did not have to exhaust an administrative process. In regards to hostile work environment and retaliation, since she had already filed a discrimination charge against defendant UCA with the EEOC, the adverse employment actions against her after the complaint continued without interruption until the time of Albizu-Rodríguez' employment termination. Finally,

---

[1]   Plaintiff Albizu-Rodríguez included supplemental jurisdiction under Puerto Rico Law No. 100 of June 30, 1959; Law No. 45 of April 18, 1935; Law No. 48 of May 29, 1973; Law No. 69 of July 6, 1985; Law No. 80 of May 30, 1976; Law No. 115 of December 20, 1991; and Article 1802 of the Puerto Rico Civil Code.

Teresa Albizu-Rodríguez et. al v. Carlos Albizu University,
Civil No. 08-1421 (CVR)
Opinion & Order
Page No. 3

plaintiff argues the reasons proposed by defendant as to a reorganization were pretextual, having provided three different reasons for terminating plaintiff Albizu-Rodríguez' employment. [2]

Defendant UCA filed a reply to plaintiff's opposition and Albizu-Rodríguez filed a response.  (Docket Nos. 90, 96 and 97).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law."  Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact."  Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997).  A fact is deemed "material" if it potentially could affect the outcome of the suit.  *Id.*  Moreover, there will only be a

---

[2]   It was initially indicated by defendant that plaintiff's performance was deficient, which was subsequently contradicted.  Thereafter, defendant submitted plaintiff's position was eliminated because of a reorganization yet a similarly situated employee was not terminated and treated differently and the duties of plaintiff's positions were still required and performed by another employee whose job title was modified accordingly. Defendant also submitted plaintiff rejected other positions which were offered, while plaintiff indicates she was willing to accept other alternate positions.

"genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

## UNCONTESTED FACTS

### I.    Gender Discrimination.

Plaintiff Albizu-Rodríguez, a female employee, began on December 1997 to perform one of the two Vice President positions in the Miami, Florida campus of defendant UCA[3] which included, among her duties, to formulate plans for and direct the fiscal and administrative services of the UCA. *Deft's Uncontested, Exhibit5, Albizu-Rodríguez' job description.* The other position as Vice President was occupied by Edgar Rentas ("Mr.

---

[3]   Plaintiff Albizu-Rodríguez began to work at the UCA since November 15, 1986, initially as Special Assistant to the President of the UCA under it previous name of Caribbean Center for Advanced Studies for the Miami Institute of Psychology.

Rentas"), who occupied the position at the San Juan, Puerto Rico campus of the UCA. Defendant submits both Vice Presidents, at the Miami and the San Juan campuses, respectively, received the same salaries, equal salary raises, and equal productivity bonuses in 2001. In 2004, plaintiff Albizu-Rodríguez notified Mr. Rentas of a salary adjustment as Vice President. Plaintiff also notified herself of salary adjustment but requested Mr. Rentas to submit it to Dr. Salvador Santiago, the President of the UCA. *Deft's Uncontested, Exhibit 9, Compensation Table*. Plaintiff requested that her salary adjustment be made part of the Miami payroll, rather than part of her deferred compensation. *Deft's Uncontested ¶¶16-18; Exhibit 9*.

Plaintiff Albizu-Rodríguez claims sex discrimination stating that Mr. Rentas was provided with an employment contract and had better benefits. Still, plaintiff requested that all her payments be made through payroll, including some fringe benefits as the Vice President of the UCA and she never complained formally to the Board of Trustees on the alleged difference in salary between herself and Mr. Rentas. *Deft's Uncontested ¶11-13.*[4]

Plaintiff Albizu-Rodríguez had knowledge of the terms and conditions of her employment and that she had no written or oral employment agreement with UCA. Mr. Rentas held a contract with UCA since November 2004 and plaintiff was aware of such event at least since 2004. It was not until July 10, 2007, that plaintiff Albizu-Rodríguez filed her charge with EEOC. *Id. 44, 50*.

---

[4] Plaintiff indicated other economic benefits as Vice President included her salary and fringe benefits such as health insurance and disability insurance, and contributions to the 403B plan, and an amount of money to pay for educational expenses. *Teresa Albizu-Rodríguez' depo., Deft's Exhibit 5, p 52*. Mr. Rentas' conditions were different because he was paid a portion of his salary through professional services. *Id. p. 67*.

Plaintiff Albizu-Rodríguez has claimed discrimination because of her family origin or relationships at the UCA in that she was the daughter of Mr. Albizu, founder of UCA, sister-in-law of Mr. Salvador Santiago, the President of UCA, and her husband occupied the position of Dean at the UCA.  Defendant submits Title VII prohibits discrimination on the basis of national origin not on the basis of family ties.  Still, it was precisely Mr. Salvador Santiago who provided plaintiff her first position at UCA and it was not until several years after that plaintiff's relationship with Mr. Santiago soured over difference in the implementation of UCA's policy. *Deft's Uncontested ¶¶40-41.*

Defendant has indicated plaintiff Albizu-Rodríguez, as far back as at least September 30, 2004, had knowledge that Mr. Rentas held a contract, that was to be renewed October 1st, 2005, while she was subject, upon her determination, to payroll adjustment at the Miami Campus. *Deft's Exhibits 9, 10, 12, and 13.*

Plaintiff Albizu-Rodríguez' prior complaint to the Board of Trustees of the defendant UCA of April 3, 2006, referred solely to the two policies of the President and the perceived legal and financial consequences for the University in requiring candidates to meet minimal requirements as an absolute criteria for employment and the use of only bilingual hires for new full-time faculty and directors at the UCA.  Plaintiff's above described complaint made no reference to any type of discrimination as to plaintiff in any manner whatsoever nor in regard with age or sex discrimination in employment. *Deft's Exhibit 14.*  The Board of Trustees acknowledged receipt of the letter of April 3, 2006, forwarded by Chancellor Gerardo Rodríguez and determined to stay the recruitment policy approved for the Miami campus until it concluded deliberations and reached a decision. *Id. Exhibit 15.*

The published call for candidates for President of the UCA included as requirement for the position ¶2, "Doctoral degree (Ph.D.) in his or her professional area and at least five years of experience in a senior position in academic administration, preferably in the private higher education sector and in university-level teaching". *Id. Exhibit 16*. Applications were to be submitted before May 22, 2007. *Id.*

## II.   Age Discrimination.

Plaintiff Albizu-Rodríguez has claimed age discrimination in the Amended Complaint for having been replaced in her position and/or duties by a younger female, Ms. Sylvia E. López.  Defendant UCA has submitted plaintiff Albizu-Rodríguez has made no prior administrative claim of age discrimination and, even if so, no such replacement of the Vice President positions eliminated in the reorganization ensued.

Ms. López was appointed in 1999 as Assistant to the Vice President under the direct supervision of Mr. Edgar Rentas, the Vice President for the San Juan campus of the UCA and performed her job in San Juan, Puerto Rico, not at the Miami campus.  *Deft's Uncontested, Exhibit 17*.  With date of October 26, 2007, Ms. López' title was temporarily changed to Executive Deputy Director of Finance and Administration.  *Id., Exhibit 18.*

On May 17, 2007, after the Board of Trustees' reorganization and having eliminated the Vice President positions, plaintiff Albizu-Rodríguez was offered the position of Executive Director for Development and Fund-raising with fringe benefits described. *Deft's Exhibit 21*.   Plaintiff Albizu-Rodríguez rejected the position offered.  *Deft's Exhibit 21; Jorge González-Monclova's depo; Exhibit 22, Albizu-Rodríguez' letter of June 4, 2007.*

Plaintiff's administrative claim with the EEOC refers to her letter of April 3, 2006,

as informing the Board of Trustees its actions and decisions were discriminatory and contrary to the Civil Rights Act.  In the EEOC statement, plaintiff indicated that, upon her letter of 2006 complaint, −which attached the letter of April 3, 2006, to the Board of Trustees as to the two policies in the Miami campus implemented by the President−, defendant initiated a campaign of discrimination, harassment and pressure for reason of her family relationships, gender and for her opposition to discriminatory practice.  *Deft's Exhibit 24, Ms. Albizu-Rodríguez' sworn statement.*

The EEOC complaint refers to terms and conditions of employment occupying positions similar to plaintiff Albizu-Rodríguez being much better than those given to her. *Id. ¶ g.*  Plaintiff also complained of discriminatory, abusive and hostile practices on the basis of sex and family links.  *Id.p. 7.*

### III.   Retaliation Claims.

Plaintiff Albizu-Rodríguez' Amended Complaint has also claimed Title VII violations in unlawful retaliation because of her complaints of discriminatory employment practices, including her initial complaints of certain university policies imposed by Dr. Salvador Santiago, as President of UCA and she was denied due process in retaliation for said complaint.

Defendant submits as uncontested that Dr. Santiago was the one who hired plaintiff and offered her the initial position at the UCA and approved the two positions of Vice Presidents at UCA, which plaintiff was appointed to at the Miami campus.  *Deft's Uncontested ¶42; Exhibit 5, Teresa Albizu-Rodríguez' depo. p.22.*  Plaintiff's complaint letter to the Board of Trustees on April 13, 2006 in regard to the two university policies

made no claim of employment discrimination as to plaintiff Albizu-Rodríguez. Said complaint was investigated and dismissed. *Id. ¶¶19-21.*

Plaintiff Albizu-Rodríguez claimed she was not considered for the position of President of the UCA. The Board of Trustees published the vacancy for said position indicating the candidate required a doctorate degree or PhD to apply for the position, with closing date of May 22, 2006. *Id. ¶¶ 22-23.* At the time of closing date and at the present time, plaintiff Albizu-Rodríguez did not possess the PhD. *Id. ¶¶ 23-24, 27, Exhibit 16, Dr. José A. Franceschini-Carlo's report.* The candidate selected, Dr. Ileana Rodríguez, held a doctorate degree or PhD *Id. ¶26.* Dr. Rodríguez started as President of UCA on June 2007.

On October 12, 2007, plaintiff was terminated from employment at UCA. Plaintiff Albizu-Rodríguez states she was dismissed as retaliation for filing a complaint with the EEOC. The UCA is governed by a Board of Trustees. *Deft's Uncontested ¶46.* On July 10, 2007, plaintiff Albizu-Rodríguez filed her complaint with EEOC alleging sex but not age discrimination. However, the Board of Trustees of the UCA had approved a reorganization plan at its meeting of February 26, 2007. Both positions of Vice President, at Miami and San Juan campuses of the UCA were eliminated under said reorganization.

Plaintiff Albizu-Rodríguez also claims contrary to her employment termination as Vice President, Mr. Rentas continued with employment at UCA. Mr. Rentas' position as Vice President of the San Juan campus of the UCA, although eliminated through reorganization plans of the Board of Trustees, continued upon his filing of civil state action and request for injunctive relief. The state court injunction issued was thereafter sustained on appeal and the case became subject to arbitration being thereafter settled.

Teresa Albizu-Rodríguez et. al v. Carlos Albizu University,
Civil No. 08-1421 (CVR)
Opinion & Order
Page No. 10

Also at hand as to retaliation should be considered the recent Supreme Court decision of <u>Crawford</u> which addressed the scope of conduct protected by Title VII anti-retaliation provision. *See* <u>Crawford v. Metropolitan Government of Nashville & Davidson County, Tenn.</u>, 129 S.Ct. 846 (2009) (assisting a fellow employee in filing or pursuing her complaint qualifies as protected opposition to the complained-of harassment and retaliation). *See also* <u>Collazo v. Bristol-Myer Squibb Manufacturing</u>, No. 09-1665, slip op.(1st Cir., August 5, 2010).

## LEGAL DISCUSSION

### I. Title VII Claims.

Defendant UCA submits plaintiff Albizu-Rodríguez' claims for civil rights violation on account of discrimination in employment are barred for failure to exhaust administrative proceedings. The exhaustion of administrative proceedings bars the court's action because Title VII has said pre-requisite before the filing of a lawsuit.

Plaintiff Albizu-Rodríguez has indicated the discriminatory actions[5] against her began since late 2004 and early 2005, for having brought a complaint on April 3, 2006 before the Board of Trustees of defendant UCA for review of two university policies regarding bilingual education, knowing as the latest on April 3, 2006 of the claimed discriminatory act. On July 10, 2007, plaintiff filed with the EEOC for sex discrimination

---

[5] Under Title 29, <u>United States Code</u>, Section 206(d), discrimination as to payment on the basis of sex is prohibited insofar as "equal work on jobs performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions".

<u>Teresa Albizu-Rodríguez et. al v. Carlos Albizu University</u>,
Civil No. 08-1421 (CVR)
Opinion & Order
Page No. 11

and retaliation.  Thus, failure to file an action within the statutory period, which was filed with the EEOC on July 10, 2007 for sex discrimination and retaliation, it should now be considered barred.[6]

Plaintiff submits that under Title VII, a discrimination charge with the EEOC is to be filed within 300 days from the alleged discriminatory action when discrete acts of discrimination are alleged.  However, since plaintiff has also raised a hostile work environment which is comprised of a series of separate acts, it is only necessary than an act contributing to her claim occurs within the filing period, regardless that separate acts contributing to the claim fall outside the filing period.  Plaintiff Albizu-Rodríguez has claimed that discriminatory acts by defendant, amounting to retaliation, started at least by April 3, 2006, when she complained to the Board of Trustees for implementing the bilingual policy and continued, without interruption, up to the time of her dismissal and even thereafter.  As to the discrimination because of gender based on difference in salary, terms and conditions of employment as to a male counterpart, Mr. Rentas, said discrimination started before 2004 and continued without interruption, within and outside the 300 days filing period.

---

[6] Defendant submits the administrative charge made no mention of age discrimination.  Plaintiff's opposition indicates the age claims are based on local state law of the Commonwealth of Puerto Rico, Law No. 100, for which it shall be discussed separately.

<u>Teresa Albizu-Rodríguez et. al v. Carlos Albizu University</u>,
Civil No. 08-1421 (CVR)
Opinion & Order
Page No. 12

### A.  Exhaustion Requisite.

A plaintiff must exhaust administrative remedies, including EEOC procedures, before proceeding under Title VII in federal court.  <u>Lebrón-Ríos v. U.S.Marshal Serv.</u>, 341 F.3d 7, 13 (1st Cir. 2003).[7]

It is undisputed from the documents included by both parties that age discrimination was not subject of an administrative complaint, although gender discrimination was indeed mentioned in the EEOC complaint of 2007.  As to plaintiff Albizu-Rodríguez' knowledge of Mr. Rentas' contract, it is also uncontradicted since it was object of her memorandum with a pay adjustment in 2004 to become effective for the budget year 2005.  Plaintiff also knew Mr. Rentas was under a contract and agreed to have her payment adjustment be part of plaintiff's payroll.  Although plaintiff Albizu-Rodríguez complains that the designated new president Dr. Ileana Rodríguez assigned functions to Ms. López, a younger employee, that were among plaintiff's duties, Dr. Rodríguez was appointed President in June of 2007.  Ms. López' position was temporary reassigned as Deputy Director of Finance and Administration  on October 26, 2007 but plaintiff has claimed duties were assigned prior to said date.

Still, the administrative complaint filed by plaintiff on July 19, 2007, failed to make any mention of age discrimination, for which reason exhaustion of administrative remedies was not complied with in regards to age discrimination claims now raised in the Amended

---

[7]  Exhaustion requirement is not a jurisdictional prerequisite but rather is subject to waiver, estoppel, and equitable tolling.  <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 102 S.Ct. 1127 (1982).  The Court of Appeals for the First Circuit has, however, taken a narrow view of equitable exception to Title VII exhaustion requirements.  <u>Mack v. Great Atl. And pac. Tea Co., Inc.</u>, 871 F.2d 179, 185 (1st Cir. 1989) (quoting <u>Earnhardt v. Commonwealth of Puerto Rico</u>, 691 F.2d 69, 71 (1st Cir. 1999).

Complaint.   As such, plaintiff Albizu-Rodríguez is precluded from raising an age discrimination complaint for failure to exhaust her administrative claim.

### B.  Sex or Gender Discrimination.

Plaintiff Albizu-Rodríguez filed an administrative complaint as to discrimination in terms and conditions of employment with the EEOC, making specific reference to male employee with a similar position, Mr. Rentas.  Exhaustion of sex discrimination prior to bringing suit in this federal forum is apparent and *prima facie* established.

Defendant UCA refers to plaintiff not having brought the action on this gender/sex discrimination within the 300 days period since plaintiff Albizu-Rodríguez had been aware since 2004 that Mr. Rentas held a job contract which was different to plaintiff's employment as a payroll employee.  Plaintiff refers to knowledge of the disparate benefits since the auditor's report was provided to defendant UCA.

First and foremost, plaintiff Albizu-Rodríguez attempts to bring suit in the Commonwealth of Puerto Rico linking her Title VII claims to state employment provisions. The Commonwealth of Puerto Rico is a deferral jurisdiction as would be the Florida state which allows exhaustion upon filing with the EEOC within 300 days of the alleged unlawful conduct.  Rivera v. Puerto Rico Aqueduct and Sewer Auth., 331 F.3d 183, 188 (1st Cir. 2003).

Timeliness requirement under 42 U.S.C. §2000e-5(e)(1) is mandatory and failure to file within the time period means the potential plaintiff loses the ability to recover for the alleged discrimination.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 110, 122 S.Ct. 2061 (2002).  A charge is to be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred", or within 300 days after the

Teresa Albizu-Rodríguez et. al v. Carlos Albizu University,
Civil No. 08-1421 (CVR)
Opinion & Order
Page No. 14

unlawful practice if "the person aggrieved has initially instituted proceedings with an authorized State or local agency.  The longer period is available only in so-called deferral jurisdictions including Puerto Rico.  <u>Bonilla v. Muebles J.J. Alvarez, Inc.</u>, 194 F.3d 275, 278 & n. 4 (1ˢᵗ Cir. 1999).

Defendant UCA submits that  plaintiff Albizu-Rodríguez well knew since back in 2004 on account of her own correspondence that Mr. Rentas held an employment contract instead of falling under a payroll as plaintiff Albizu-Rodríguez had determined.  As the grounds for her sex/gender discrimination plaintiff alleged unequal job earnings between plaintiff and Mr. Rentas, for which the administrative claim raising such issue filed in July 2007 should be considered time-barred.

Plaintiff's *Uncontested* Statement includes the disparity in remuneration between Albizu-Rodríguez and Rentas, as earning a much higher salary and benefits, for the same position of Vice President at their respective campuses.  *Docket No. 90, Supplemental Statement*.  Plaintiff also submitted the audit report, prepared by Kevane Grant Thornton LLP, dated October 11, 2006, served as basis of plaintiff's allegation as to the gaps in remuneration.  *Plaintiff's Uncontested, Exhibit 5.*  In addition, plaintiff submits that defendant through González concealed and provided false information as to the difference in compensation, informing Albizu-Rodríguez her salary and benefits were similar to that of Rentas, knowing such statement to be false and even after having received the copy of the audit report.  The letter referred of December 2, 2004, stating both Vice Presidents received similar benefits and remuneration, was incorrect. *Exhibit 2, Albizu-Rodríguez' depo. p. 56.* Albizu-Rodríguez did not receive educational payments, other insurance payments or any

amount for the education of her children. *Id.; Plaintiff's Uncontested, Exhibit 9, Mr. Rentas' contract.*

Plaintiff's opposition refers to a continuous violation doctrine since she has not alleged only a discrete discriminatory act but also related acts of discrimination that fell within the 300-day period.  Each discrete act constitutes thus a separate and actionable unlawful employment practice and her sex discrimination claim should be considered timely as long as one act falls within the charge filing period.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. at 2072.  The Court has made plain that "[d]iscrete acts such as termination, failure to promote, denial of transfer or refusal to hire ... constitute a separate actionable unlawful employment practice. *Id.* at 2073). *See id.; see also* Miller v. N.H. Dep't of Corr., 296 F.3d 18, 22 (1st Cir. 2002).

The Court of Appeals for the First Circuit indicated, however, that once defendant articulates a non-discriminatory reason for the action, unless plaintiff submits evidence from which a reasonable fact finder could conclude that this explanation is a pretext masking discrimination, plaintiff's initial burden has not been met.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817 (1973).

Defendant UCA has submitted the difference now claimed from Mr. Rentas' employment derives from the fact he held a contract while plaintiff Albizu-Rodríguez determined to become an employee and all remunerations be part of her payroll.  This fact was well known by her as far back as 2004 when she clarified her position in writing on this issue.

<u>Teresa Albizu-Rodríguez et. al v. Carlos Albizu University</u>,
Civil No. 08-1421 (CVR)
Opinion & Order
Page No. 16

Defendant submits there was no disparate treatment on account of sex or gender discrimination for plaintiff being a female and Rentas being a male.   The alleged discrimination that even after both Vice President positions were eliminated under a reorganization, that is, the one of plaintiff Albizu-Rodríguez at the Miami campus and Mr. Rentas' position at the San Juan campus, Rentas continued working well after plaintiff's termination was rebutted by defendant UCA.  It is defendant's contention Mr. Rentas filed a state law suit and received an injunctive relief which was subsequently affirmed on appeal, for which he continued in employment at UCA until the matter was referred for arbitration and finally settled.  Plaintiff Albizu-Rodríguez has not presented any evidence to establish that insofar as Mr. Rentas' continued employment after the Vice President positions were eliminated, defendant's proposed reasons were pretextual.

However, plaintiff's opposition as to the difference in remuneration, that is, salary, wages and terms and conditions of employment of plaintiff Albizu-Rodríguez  and Mr. Rentas cannot be so easily dismissed as per defendant's request solely on the basis Mr. Rentas held a contract while plaintiff was paid under payroll.

Plaintiff Albizu-Rodríguez avers she was initially misled as to the remuneration received by Rentas, that defendant well knew of the disparate treatment between the two positions of Vice President since at least the audit report was received, and having exhausted her EEOC complaint requisite, the claim for sex/gender discrimination is timely.

In addition, as to any claim on this issue prior to the 300-day administrative filing, plaintiff submits and this Court is aware that conduct that occurs prior to said 300-days may be considered as relevant background evidence.[8]

Plaintiff Albizu-Rodríguez in opposing summary judgment as to the sex/gender claim has also shown that Mr. Rentas, while occupying the same position as Vice President as Albizu-Rodríguez, was entitled to earn additional compensation for services performed, which Albizu also performed but was never compensated for the same.[9] Plaintiff Albizu-Rodríguez' deposition indicated she did not receive educational payments before the date of the documents defendant made reference or other insurance payments nor any amount for the education of her children.[10] *Exhibit 1, ¶7; Exhibit 2, Albizu-Rodríguez' depo. pp. 56-57; Exhibit 5; Exhibit 17.* Albizu-Rodríguez received no vehicle owned by UCA, while Rentas had a vehicle of his own paid by the employer. Albizu-Rodríguez did not receive payment for gasoline nor car insurance; amounts from a "Fondo de Inversión Rabino" or business expenses, while Rentas received $500.00 monthly and $6,000 yearly, respectively. *Exhibit 1, ¶9; Exhibit 2, pp. 67-68.* Plaintiff also avers defendant UCA could use Renta's

---

[8] Crowley v. L.L.Bean, Inc., 303 F.3d 387 (1st Cir. 2002) (consideration of the entire scope of a Title VII claim, including behavior alleged outside the statutory time period is permissible for the purposes of assessing liabiliby).

[9] Mr. Rentas' compensation package for the same position held by plaintiff showed a difference over the same period of time as to Albizu-Rodríguez of $76,771. *Exhibit 1, ¶11; Exhibit 10b, p. 6.* Mr. Rentas was allowed up to 50% annual compensation for collaborating in design, creation and implementation of grant proposal. *Exhibit 9, pp. 3-4.* Mr. Rentas received in 2004 compensation in grant proposal work of $90,000, while plaintiff Albizu-Rodríguez was told she could not earn additional compensation for collaborating in the design, creation and implementation of grant proposal where she indeed directly participated.

[10] Mr. Rentas received, in addition to all the fringe benefits approved by the President, $600 annually for cash value life insurance, life insurance policy with $300,000 in benefits, 5% up to the maximum allowed to be contributed by UCA to his 403B plan, health insurance for him and his family members, group accident insurance, intensive care and cancer insurance, be paid for unused vacation accrual at his discretion, as well as bonuses and productivity and compensation at levels granted to employees of either campus.

Teresa Albizu-Rodríguez et. al v. Carlos Albizu University,
Civil No. 08-1421 (CVR)
Opinion & Order
Page No. 18

house to celebrate activities and entertain guests of the UCA at his sole discretion and would receive reimbursement of all costs related to said activities, including food, housekeeping, gardening, ground maintenance, electricity, water, telephone and others, approved at the discretion of the President of the UCA.  Thus, plaintiff Albizu-Rodríguez has indicated having received significantly less compensation and benefits for the same work and position as held by Mr. Rentas.  *Exhibit 5, Kevane Grant Thornton LLP audit report of 10-11-2006*.[11]

Plaintiff has established a *prima facie* case of sex/gender discrimination, in addition to having exhausted her administrative EEOC proceedings on this cause of action as to sex/gender discrimination.  In dealing with plaintiff's claims, it is one thing to claim discrimination on the disparate employment conditions between male and female similarly situated.  It is another thing to argue, however, the resulting dismissal was but for sex/gender discrimination since as to such action the employer, defendant UCA, has submitted having reasons for both positions to have been eliminated by the Board of Trustees and for Mr. Rentas having remained for a longer time span on account of having sued and protected by injunctive relief until the issue was object of arbitration and the parties finally settled.

As to the second instance of the dismissal and Mr. Rentas having remained for a longer period because of discrimination against plaintiff, in the absence of a smoking gun evidence, a Title VII plaintiff must attempt to prove the case resorting to the McDonnell

---

[11]   The audit report revealed that compensation from the year 2001-2005 for Mr. Rentas was $1,095,522.00, while total compensation for plaintiff Albizu-Rodríguez for the same period was $841,609.00.  *Exhibit 5, pp. 10, 24.*

Douglas burden-shifting framework.  A *prima facie* case of discrimination raises a rebuttable presumption that discrimination sparked the adverse employment action and it is for the employer to then meet the burden of putting forward legitimate non-discriminatory motive for its action.  Defendant UCA has prompted the reasons for the dismissal, applicable to both positions, which were eliminated because of a reorganization. Business judgment decisions by an employer, as a result of a legitimate reorganization, can be pursued, without violating Title VII even if one of those positions is held by a member of a protected group.[12]

In the present case, the first instance of alleged sex/gender discrimination because of the disparate remuneration and employment benefits is rebutted by defendant solely on an explanation that plaintiff Albizu-Rodríguez was a full-time employee while Mr. Rentas was holding a contract, without more.  Such representation can hardly shift the burden to plaintiff under the McDonnell Douglas rationale.[13]  Although there is no smoking gun evidence to substantiate the disparate employment remuneration and benefits were a result of sex/gender discrimination, in light of the similar terms and duties and obligations of both Mr. Rentas, a male, and plaintiff Albizu-Rodríguez, a female, both holding the same positions as Vice President, with equal educational background and work performance, both positions created at the same time by the Board of Trustees, as well as their contemporary appointment to the positions, might serve as circumstantial evidence of

---

[12]  Smith v. F.W. Morse & Co., Inc., 76 F.3d 413 (1st Cir. 1996).

[13]  A fact finder's disbelief of the reasons put forward by the defendant, together with the elements of the *prima facie* case, may suffice to show intentional discrimination in violation of Title VII.  St. Mary's Honor Center v. Hicks, 509 US 502, 511 113 S.Ct. 2742 (1993).

sex/gender as the only remaining variable for the inequality.[14]  All knowledge is inferential

and because judges are not mind-readers and cannot reach into the mind of a Title VII

defendant, a certain amount of inference-drawing is necessary in any case, whether the

evidence is direct or circumstantial.  *See* Smith v. F.W.Morse & Co., Inc., 76 F.3d at 432-

433.  See also, Charles A. Sullivan, *Accounting for Price Waterhouse: Proving Disparate*

*Treatment Under Title VII*, 56 Brook.L.Rev. 1107, 1138 (1991) ("'[D]irect evidence' of intent

cannot exist, at least in the sense of evidence which, if believed, would establish the ultimate

issue of intent to discriminate." Discrimination can be proven through elimination of other

plausible non-discriminatory reasons for adverse employment action until most plausible

reason remaining is discrimination.  *See* Thomas v. Eastman Kodak Co., 183 F.3d 28, 61 (1st

Cir. 1999); *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S.Ct.

2097 (2000); *and see* Chadwick v. WellPoint, Inc., 561 F.3d 38 (1st Cir. 2009).

As such, the intent to discriminate on the issues of such disparities in employment

remunerations and conditions of similarly situated individuals wherein the main variable,

if any other at all, is sex/gender, and resting thus on intent, cannot be solved at the level of

summary judgment, at least not in the present case.

Thus, it is for a jury to determine that it is more likely than not that the employer's

decision was motivated by sex/gender discrimination and to find for employer if it finds the

---

[14]   To successfully allege disparate treatment, plaintiff must show that others similarly situated in all relevant aspects were treated differently by the employer; the comparison case need not be perfect replicas but must closely resemble one another in respect to relevant facts and circumstances. García v. Bristol-Myers Squibb Co., 535 F.3d 23 (1st Cir. 2008) (*quoting* Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999).

employee was subject to employment decisions and/or discharged for reasons others than sex/gender.[15]

### C.  Hostile Work Environment.

Plaintiff also argues having submitted a claim of hostile work environment wherein each discriminatory act from the time of her initial complaint to the Board of Trustees on 2006 is part of defendant's scheme and pattern to discriminate which continued without interruption until the time of her termination. The discrimination actions started at the very least after April of 2006 when she complained to the Board of Trustees about the implemented bilingual policy at the UCA.

The prohibition under Title VII for discrimination because of sex, not being limited to economic or tangible discrimination, includes not requiring people to work in a discriminatory hostile or abusive environment.  Title 42, United States Code Annotated, Section 2000e-2(a).  A hostile environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the employee's employment.  Incidents of nonsexual conduct, such as work sabotage, exclusion, denial of support and humiliation, can in context contribute to a hostile work environment.  It is essential that plaintiff holds proof that the work

---

[15]  Carey v. Mt. Desert Island Hosp., 156 F.3d 31 (1st Cir. 1998).

<u>Teresa Albizu-Rodríguez et. al v. Carlos Albizu University</u>,
Civil No. 08-1421 (CVR)
Opinion & Order
Page No. 22

environment was so hostile or abusive, based on one of the prohibited factors identified in Title VII –race, color, religion, sex, or national origin–.  See Title 42, U.S.C.A. 2000e-1 and 2000e-2.[16]

Defendant UCA submits the discrimination protected against by federal provisions relates to national origin, sex or gender and not on the basis of family and/or marriage relations.  Plaintiff has submitted she engaged in protected conduct when she complained on April 13, 2006, about a bilingual policy implemented at the UCA Miami campus that was discriminatory against applicants and/or candidates because of national origin of the applicants and/or candidates who should be protected activity under Title VII.  Albizu-Rodríguez also complained to defendant's top officers with regard to the discriminatory and retaliatory actions taken against her as well as having filed an EEOC discrimination charge on July 10, 2007.

The resulting retaliatory acts which constituted hostile work environment which are described by plaintiff have not been contested whatsoever by defendant UCA.  In fact, defendant does not deny that these facts occurred and does not deny they were pervasive, solely that as to age discrimination claims those were non-exhausted and need not be

---

[16] Title 42 U.S.C.A. §2000e-1(a) and §2000e-(a)2  provide:

(a) Employer practices
It shall be an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

addressed.  As described by plaintiff the acts which constituted hostile work environment were almost on a daily basis telling plaintiff, through the decision makers González-Monclova, López-Ferré, Malavé, Prevor and Dr. Rodríguez -the latter after June of 2007–, that the Board of Trustees was going to get rid of Albizu-Rodríguez and her family members, that she would never be chosen as University President, that Albizu-Rodríguez and her husband would be given their walking papers, by the Summer of 2007, and the Board would put plaintiff and her family through a great deal of pain since her days were counted at the University, the Board would select a superstar and Albizu-Rodríguez was not it, and Albizu-Rodríguez and her husband were trying to sell the University as if it were their own business, as well as having engaged in unethical behavior in relation to Foundation activities.[17]

TitleVII hostile work environment claims are comprised of a series of separate acts that collectively constitute one unlawful employment practice and issues whether the conduct was objectively severe or pervasive enough to create hostile work environment is for the jury.  Incidents of nonsexual conduct, such as work sabotage, exclusion, denial of support, and humiliation, can contribute to a hostile work environment covered under Title VII.  *See* Gorski v. New Hampshire Dept. of Corrections, 290 F.3d 466 (1st Cir. 2002) (quoting O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001).

---

[17]  Plaintiff's statement of other incidents making reference to her age are not discussed herein for the failure to exhaust her age discrimination claims.  However, such evidence may be relevant, for a hostile work environment at a later stage, as well as comments and threats and retaliation regarding family members for plaintiff to establish the conduct to be sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment since hostile can be both objectively and subjectively offensive, that is, one that a reasonable person would find hostile or abusive, and one that the victim in fact perceived to be so.  Rosario v. Department of the Army, 607 F.3d 241 (1st Cir. 2010).

Since defendant has not contested the material facts as to hostile work environment submitted by plaintiff, on account of a claim of discrimination because of sex/gender, summary disposition of the hostile work environment claim under Title VII is not warranted.

## II.    Pendent State Claims.

Plaintiff Albizu-Rodríguez is and has been for a long time a resident of the state of Florida, where she retained employment even prior to work with defendant UCA. However, the supplemental claims in the Amended Complaint relate to provisions of the employment laws of the Commonwealth of Puerto Rico. In fact, although plaintiff worked in the Miami Campus of UCA, the Court already ruled on defendant UCA's request for transfer of action under *forum non-conveniens* and Title 28, United States Code, Section 1404(a). (Docket Nos. 11 and 22). The Court further examined therein that most of the witnesses to this case are employees and officers of the San Juan Campus, including the President of UCA, its Board of Trustees, plaintiff's supervisors and plaintiff's replacement. However, plaintiff's employment location and job duties entailed being the special assistant to the president of the Miami Institute of Psychology of the Caribbean Center for Advanced Studies, thereafter the UCA in Miami, Florida. *Deft's Uncontested, Exhibit 3, Albizu-Rodríguez' resume.*

The parties have raised factual issues that need to be developed and assessed as to the employment conditions. Plaintiff Albizu-Rodríguez denied defendant's averment that she must have known about the contract and remuneration of Mr. Rentas since 2004. She

<u>Teresa Albizu-Rodríguez et. al v. Carlos Albizu University,</u>
Civil No. 08-1421 (CVR)
Opinion & Order
Page No. 25

also submits the two positions of Vice President of defendant UCA were created to perform functions and duties described as per job description for the entire UCA system-wide, not for a specific campus. *Plaintiff's Exhibit 1, ¶2; Exhibit 8, Job Description.*[18]

Pendent jurisdiction as to state law supplementary claims exists whenever there is a claim arising under the Constitution, the Laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute, but one constitutional case. The state claims must be linked to the federal claim by a "common nucleus of operative facts", and must be sufficiently substantial to confer federal court jurisdiction. <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966); <u>Rodríguez v. Mortgage</u>, 57 F.3d 1168, 1175 (1st Cir. 1995).

In <u>Gibbs</u>, 383 U.S. at 726, the Supreme Court ruled that a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *See* <u>Martínez v. Colón</u>, 54 F.3d 980, 990 (1st Cir. 1995).

---

[18] Plaintiff Albizu-Rodríguez traveled frequently to Puerto Rico to perform some of her functions and duties at the San Juan campus, including budget issues, meetings with top officers and the Board, and provided counsel and guidance to professional and regional accreditation issues of both campuses. Officers in Puerto Rico also traveled to Miami to hold meetings with plaintiff and to review and evaluate plaintiff's performance. Plaintiff's employer was the defendant UCA, whose main and principal place of business and offices are located in San Juan, Puerto Rico. *Exhibit 1, pp. 59-60.*

The preferred approach is pragmatic and case-specific. Thus, in "an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims." Rodríguez v. Doral Mortgage Corp, at 1177; Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996).

Being the exercise of pendent jurisdiction discretionary, this Magistrate Judge will exercise pendent jurisdiction as to plaintiff's state law claims. No consideration on the merits of the application of Puerto Rico employment laws is required as this federal court has determined to exercise jurisdiction over the state pendent claims upon having retained federal jurisdiction on the Title VII claims for sex/gender discrimination claims on the disparate remuneration and conditions of employment as well as a hostile work environment.

## CONCLUSION

In view of the above, defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART (Docket No. 59).    Summary judgment is GRANTED as to the age discrimination claim for being time-barred upon failure to exhaust administrative proceedings for a Title VII federal claim.   Summary judgment is DENIED as to the remaining causes of action.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 9th day of August of 2010.

S/ CAMILLE L. VELEZ RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE